IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BOBBY LANE CLAIBORNE,
Plaintiff,

v.  Civil Case No. 3:19-cv-113

DANA LYNN YOUNGMAN, et al.,
Defendants.

## OPINION

Bobby Lane Claiborne, a retired African American veteran, worked at the Defense Logistics Agency Aviation Branch ("the DLA Avn") after serving on active duty. Claiborne alleges that his coworkers subjected him to widespread discrimination based on his race, disabilities, and veteran status. Eventually faced with the choice between termination and retirement, Claiborne retired.

Claiborne has sued his former employer and seven other defendants under Title VII, the Rehabilitation Act, the Family Medical Leave Act ("FMLA"), and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). The defendants have moved to dismiss Claiborne's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will deny the motion in part and grant the motion in part. The Court will deny the motion as to Claiborne's denial of training claim (Count One). In all other respects, the Court will grant the motion.[1]

---

[1] After the defendants moved to dismiss Claiborne's original complaint, the Court granted Claiborne leave to amend his complaint. Claiborne filed an amended complaint on July 2, 2019, which the defendants moved to dismiss. Although Claiborne did not respond to the motion to dismiss, he filed three amended complaints. In November, 2019, the Court struck Claiborne's second through fourth amended complaints and directed him to respond to the motion to dismiss. The Court instructed Claiborne that if he wanted to amend his complaint, he would need to file a motion to amend explaining why the amendment would not prejudice the opposing party, he had

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT[2]

In April, 2012, Claiborne retired from active duty in the Army and returned to work at the DLA Avn as a Weapon System Support Manager ("WSSM"). The DLA Avn scheduled Claiborne to transition to a Weapon System Program Manager ("WSPM") position by July, 2012. Instead of transitioning Claiborne to the WSPM role in July, however, Claiborne's supervisor, Dana Lynn Youngman, assigned him to the Fusion Cell division as a WSSM. In February, 2013, Youngman moved Claiborne to a WSPM position. In October, 2013, the DLA Avn Division Chief, Colonel Marc Thoreson, proposed terminating Claiborne. Claiborne accepted disability retirement instead.

Claiborne alleges that the DLA Avn discriminated against him in a variety of ways leading up to his retirement. Although at times unclear and disjointed, the factual allegations fall into five general categories: (1) Youngman denied Claiborne training mandatory for the WSPM position, (2) Youngman gave him a poor performance review because of this lack of training, (3) Youngman failed to provide him with reasonable accommodations for his various disabilities, (4) Youngman

---

not acted in bad faith, and the amendment would not be futile. Claiborne did not respond to the motion to dismiss but filed a fifth amended complaint that does not address the factors required by the Court. Thus, to the extent that Claiborne asks this Court to construe his complaint as a motion to amend, the Court will deny the motion. Claiborne's July 2, 2019 amended complaint (Dk. No. 21) remains the operative complaint, and the Court only considers the facts alleged in that complaint to resolve the motion to dismiss.

[2] The Order granting Claiborne leave to amend his original complaint provided that, "[i]n the amended complaint, the plaintiff may not refer to or rely on any previous pleadings or filings in other cases." (Dk. No. 20, at 3.) In his amended complaint, Claiborne refers to numerous documents attached to his original complaint. Because the Court prohibited Claiborne from referring to previous pleadings in his amended complaint, the Court will not consider those attachments.

created a hostile work environment, and (5) Youngman failed to help Claiborne with the FMLA request process. The Court sets forth Claiborne's allegations in that order.

## A. Denial of Training

DLA Avn policy requires WSPMs to take formal Integrated Process Team ("IPT") training. The IPT training helps WSPMs use "the manual effectively," gain the necessary skills to follow system processes and workflows, access the system, and manage other personnel. (Dk. No. 21, at 4.) Those in charge of the WSPM program have deemed the training critical to a WSPM's success. The DLA Avn, therefore, requires WSPMs "to be certified for the position or be removed." (*Id.* at 2.)

Claiborne missed previous IPT trainings because he was on active duty. Claiborne, therefore, asked to take the July IPT training to prepare for his upcoming transition to the WSPM role. Youngman denied his request because Claiborne had not yet received a weapons system assignment, even though the DLA Avn would no longer offer the training after the July session. All WSPMs except Claiborne—including a white WSPM who had not yet been assigned a weapons system—received formal IPT training.

In lieu of the formal training, Youngman assigned a fellow WSPM, Felicia Barwell, to provide Claiborne with informal training. Barwell often did not have enough time to train Claiborne and "did not show [him] real helpful information." (*Id.* at 4.)

In addition to the IPT training, "all WSPMs had to be Level III certified in Life Cycle Logistics, and Level I . . . certified in Program Management[,] which meant getting certification

from [the] Defense Acquisition University." (*Id.* at 7.) Claiborne had trouble successfully completing those certifications.

## B. Poor Performance Review

Despite the lack of training, Youngman eventually assigned Claiborne to two weapons systems without any technical specialists to assist him. He had to "single-handedly" coordinate with technical specialists in other locations, while the other WSPMs had support personnel. (*Id.* at 5.) Youngman and her supervisor also discontinued a monthly meeting that Claiborne found helpful for tracking issues with the systems.

Youngman expected Claiborne to perform at the same level as his colleagues who had not left the position for several years to serve on active duty, who had received the formal IPT training, and who had "experienced the organizational changes for numerous years." (*Id.* at 3.) Because he did not have adequate training or technical specialists supporting him, Claiborne struggled in the WSPM role.

In September, 2013, Youngman gave Claiborne "an unfair minimally successful [m]id-[t]erm [p]erformance [c]ounseling [r]eview." (*Id.* at 9.) Claiborne alleges that "this appraisal was discriminatory" because he had not received the mandatory training that "other white WSPMs" had. (*Id.*) Youngman gave the review "to Colonel Thoreson to use with the Letter of Recommendation to terminate" Claiborne. (*Id.*)

## C. Failure to Provide Reasonable Accommodations

On July 17, 2012, Claiborne provided Youngman with medical records identifying his various disabilities, which included osteoporosis, pseudophakia, and post-traumatic stress disorder ("PTSD"). Youngman responded by "saying [that] she did not want the medical records." (*Id.* at 9.) The DLA Avn "does not have any classes to show people how to fill out" a reasonable

4

accommodation request. (*Id.* at 11.) "Youngman showed no major concerns [about] ... [Claiborne's] medical disabilities" and "did not engage in the interactive process, provide a reasonable accommodation[,] [or] ... inquire about what she could do to assist him in supporting his customers." (*Id.*) Youngman did not sit down with Claiborne to discuss his disabilities, and the DLA Avn "went ... 12 months before addressing" those disabilities. (*Id.* at 10.)

On July 5, 2013, Claiborne met with DLA Avn's Disability Program Manager, Cathy Hobson, to discuss accommodations for his PTSD. Hobson told Claiborne that Youngman should have been involved after Claiborne sent Youngman his medical records. Hobson referred Claiborne to the Job Accommodation Network for assistance in compiling an accommodation request. Claiborne also alleges that, when he later "expressed opposition to management's actions" in the meeting, management retaliated against him. (*Id.* at 2.)

### D. Hostile Work Environment

On February 5, 2013, Youngman issued Claiborne a Letter of Leave Requirement ("LLR") requiring Claiborne to prove that he had attended a medical appointment when he took medical leave. The letter said that Claiborne's "lack of attendance ... ha[d] an adverse impact on the operations" of the DLA Avn. (*Id.* at 8.) Youngman issued the letter against the advice of an African American human resources employee, who told Youngman to give Claiborne a warning letter first. The LLR "caused [Claiborne] enormous stress and migraine headaches." (*Id.*) Claiborne "[doesn't] think [Youngman] required any other person in [the] Army Division Team to provide proof of attending doctor's appointment[s]." (*Id.*) Youngman provided the LLR to Thoreson "to use with his letter of recommendation to terminate" Claiborne. (*Id.*)

On September 12, 2013, Youngman asked Claiborne whether he planned to return to work after a doctor's appointment. On September 19, 2013, Youngman called Claiborne while he was

5

at a doctor's appointment to see if he planned to return to work that day. Claiborne alleges she did this because "Youngman has this personality to get even with people who have [an] Africa[n] American background when she feels threaten[ed] that the person might excel or is equal to or high in position to her in some way." (*Id.* at 9.)

Claiborne also alleges several other instances of allegedly discriminatory conduct. Youngman once insisted that Claiborne walk to a colleague's desk to ask a question rather than call the colleague, even though she knew that Claiborne walked with a cane. Further, "Youngman tried to suggest [Claiborne's] medical treatment locations." (*Id.* at 10.) Even though Claiborne had PTSD and a traumatic brain injury, Claiborne "pushed [himself] because of the pressure from [his] supervisors." (*Id.*) Youngman also disapproved Claiborne's request to participate in the volunteer leave transfer program ("VLTP"), which would have allowed other employees to transfer leave to him. The former DLA Avn Division Chief, a white male, disapproved of the leave request as well. On separate occasions Youngman "slammed [Claiborne's] file cabinet with her foot" while he was using it and "intentionally dropped [a] printer cartridge in the trash can from high in the air." (*Id.* at 9.) Claiborne contends that Youngman "knew [he] had PTSD" and that the loud noises "made him jump and have flashbacks" to rocket attacks in Iraq and Afghanistan. (*Id.*)

### *E. Failure to Assist with the FMLA Request Process*

On February 13, 2013, Claiborne gave Youngman a letter from a licensed clinical social worker, requesting that Youngman help Claiborne complete his FMLA request. Claiborne also

"provided . . . Youngman [with] the FMLA forms filled out." (*Id.* at 10.) Youngman, however, "never discussed . . . the procedures" with him. (*Id.*)

## III. LEGAL STANDARD

The defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must therefore state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When the plaintiff appears *pro se*, as Claiborne does here, courts do not expect him to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe *pro se* complaints liberally. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This principle, however, has limits. *Id.* Courts do not need to discern the unexpressed intent of the plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

## IV. <u>DISCUSSION</u>

The defendants have moved to dismiss the case on three grounds: (1) the Court lacks jurisdiction over claims based on Claiborne's veteran status; (2) Claiborne improperly named seven current and former employees as defendants; and (3) Claiborne has failed to state a claim upon which the Court can grant relief. The Court will address each of these arguments in turn.

### *A. USERRA Claims*

Claiborne alleges that Youngman discriminated against him due to his veteran status and military duties in violation of USERRA. USERRA "provides relief against employment discrimination on the basis of an individual's 'membership ... performance of service ... or obligation' to the armed services." *Dziekonski v. United States*, 120 Fed. Cl. 806, 810 (2015) (quoting 38 U.S.C. § 4311(a)). USERRA requires federal employees to first file their claims using an administrative process set forth in the statute. *See* 38 U.S.C. §§ 4322, 4324. If an employee does not agree with the final decision in the administrative process, the employee may appeal the decision to the U.S. Court of Appeals for the Federal Circuit. *See id.* § 4324(d)(1).

Thus, under USERRA, the Court lacks jurisdiction over Claiborne's discrimination claims based on his veteran status. Even if Claiborne had exhausted his administrative remedies, Claiborne must appeal the administrative decision to the Federal Circuit. The Court, therefore, will dismiss Claiborne's USERRA claims without prejudice.

### *B. Improperly Named Defendants*

Claiborne has named Mark T. Esper—the Secretary of Defense—and seven current and former Department of Defense employees—Youngman, Thoreson, Hobson, Sharon Whitt, Ellen Weber, Barwell, and Keith Chamber—as defendants. The defendants ask the Court to dismiss the claims against all individuals except Esper as improperly named defendants.

A federal employee asserting a claim under Title VII must name the head of the relevant agency as the defendant. *See* 42 U.S.C. § 2000e-16(c); *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam). The defendants agree that Claiborne has properly named Esper, the head of the Department of Defense, as a defendant. Accordingly, because only Esper is the head of the relevant agency, the Court will dismiss Youngman, Thoreson, Hobson, Whitt, Weber, Barwell, and Chamber as improperly named defendants in the Title VII claims.[3] Esper shall remain the sole defendant in this case.

### *C. Remaining Claims*

Claiborne appears to assert several types of employment discrimination claims based on his race and disabilities. The Court construes the complaint as raising the following remaining claims: (1) discriminatory denial of training in violation of Title VII (Count One); (2) disparate treatment with regard to his performance evaluation in violation of Title VII (Count Two); (3) failure to provide reasonable accommodations in violation of the Rehabilitation Act (Count Three); (4) hostile work environment in violation of Title VII and the Rehabilitation Act (Count Four); and (5) unlawful interference with a request for leave in violation of the FMLA (Count Five).

#### *1. Count One: Denial of Training*

In Count One, Claiborne alleges that Youngman denied him training due to his race in violation of Title VII. To adequately allege discriminatory denial of training, a plaintiff must show

---

[3] Claiborne has also asserted claims under the FMLA and the Rehabilitation Act. For the reasons set forth below, the Court will dismiss those claims for failure to state a claim. Thus, the Court will not address whether Claiborne has named improper defendants with regard to his FMLA and Rehabilitation Act claims. Further, although Claiborne named the "Attorney General of the Secretary of Defense" and "Assistant United States Attorney" in his list of defendants, he asserts no claims against those individuals. (*See* Dk. No. 21, at 2.) The Court, therefore, understands the complaint to name the Attorney General and Assistant United States Attorney as individuals authorized to receive service, not as named defendants.

9

that: "(1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir 2002).

Claiborne sufficiently pleads the four elements of a denial of training claim. First, Claiborne, an African American, is a member of a protected class. Second, the DLA Avn provided formal IPT training to other members of his division. Third, Claiborne alleges that Youngman did not allow him to attend the last formal IPT training offered—a training required for the WSPM position—because he had not yet been assigned a weapons system. Instead, he says that he received haphazard, informal IPT training from a coworker. Fourth, Youngman permitted five white employees—at least one of which had not yet been assigned a weapons system—to attend the training. These allegations satisfy the elements of a discriminatory denial of training claim.[4] *See id.* The Court, therefore, will deny the motion as to Count One.

### 2. *Count Two: Discriminatory Performance Evaluation*

In Count Two, Claiborne alleges that Youngman gave him a poor performance evaluation due to his race in violation of Title VII. To adequately allege a cognizable Title VII claim based on a poor performance review, a plaintiff must allege "a plausible basis for believing . . . that race was the true basis" for the discriminatory conduct. *See Coleman v. Md. Court of Appeals*, 626

---

[4] The defendants argue that Claiborne has failed to allege an "adverse employment action." (Dk. No. 24, at 12-14). When the Fourth Circuit defined the prima facie elements of a denial of training claim, however, it did not require a separate adverse employment action. *See Artis v. Lyon Shipyard, Inc.*, No. 2:17cv595, 2019 U.S. Dist. LEXIS 225044, at *62 (E.D. Va. Sept. 30, 2019) ("The Fourth Circuit has defined the elements of a prima facie failure to train claim without any reference to the generally applicable 'adverse employment action' standard."). Thus, that argument fails.

F.3d 187, 191 (4th Cir. 2010). Further, a plaintiff must allege that he satisfactorily performed his work. *Id.* at 190.

Claiborne does not allege either that he satisfactorily performed his work or that Youngman gave him a poor performance review because of his race. Rather, Claiborne alleges that he could not adequately perform his job because Youngman denied him the training he needed, which resulted in poor work performance. The Court, therefore, will dismiss Count Two with prejudice.

### 3. *Count Three: Failure to Provide Reasonable Accommodation*

In Count Three, Claiborne alleges that Youngman failed to provide him reasonable accommodations for his disabilities in violation of the Rehabilitation Act. To state a claim for failure to provide reasonable accommodations, a plaintiff must allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *see also Taylor v. Hampton Roads Reg'l Jail Auth.*, 550 F. Supp. 2d 614, 616 (E.D. Va. 2008) ("The elements of a claim under the ADA and the Rehabilitation Act are the same.").

Claiborne has not adequately alleged a reasonable accommodation claim. The complaint details Claiborne's generalized grievances about the process for requesting reasonable accommodations and specific frustrations with Youngman's failure to adequately accommodate his disabilities. Claiborne, however, fails to allege the essential functions of his job or what accommodations he needed to perform those essential functions. The Court, therefore, will dismiss Count Three with prejudice.[5]

---

[5] Claiborne also alleges "reprisal (expressed opposition to management's actions during a

11

### *4. Count Four: Hostile Work Environment*

In Count Four, Claiborne alleges that the DLA Avn subjected him to a hostile work environment in violation of Title VII and the Rehabilitation Act. To state a claim for hostile work environment, a plaintiff must show that (1) he experienced unwelcome harassment (2) based on his gender, race, age, or disability, (3) that was sufficiently severe or pervasive to alter the conditions of employment, and (4) a basis exists to impose liability on the employer. *See Boyer-Liberto v. Fontainbluea Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (listing the Title VII elements); *Edmonson v. Potter*, 118 F. App'x 726, 730 (4th Cir. 2004) (per curiam) (listing the Rehabilitation Act elements). For a hostile work environment claim under the Rehabilitation Act, a plaintiff must also show that he "is a qualified individual with a disability." *Edmondson*, 188 F. App'x at 730.

Claiborne has not alleged severe or pervasive harassment that altered the conditions of his employment. The "severe or pervasive" standard has a subjective and an objective component. *See EEOC v. Sunbelt Rentals, Inc.* 521 F.3d 306, 315 (4th Cir. 2008). First, a plaintiff must find the alleged conduct offensive. *Id.* Second, a plaintiff must show that a reasonable person in his position "would have found the environment objectively hostile or abusive." *Id.*

Claiborne's complaint "must clear a high bar" to meet the severe or pervasive standard. *Id.* To determine if conduct qualifies as severe or pervasive, courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*,

---

reasonable accommodations meeting on July 5, 2013)." (Dk. No. 21, at 2.) Claiborne, however, does not set forth any factual allegations to support this claim. Accordingly, to the extent Claiborne requests relief for violations of the Rehabilitation Act based on retaliation, the complaint fails to state a claim for relief.

12

532 U.S. 268, 270-71 (2001). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable." *Id.* (internal citations and quotations omitted).

The discriminatory behavior alleged in the complaint—oversight of Claiborne's medical leave, occasional loud noises, and a request that he walk to a coworker's desk rather than use the phone—does not amount to more than workplace disagreements and frustrations with management decisions. *See Spida v. BAE Sys Info. Sols., Inc.*, No. 1:16-cv-979, 2016 WL 7234088, at *6 (E.D. Va. Dec. 13, 2016) ("Disagreements with management decisions . . . do not rise to the level of a hostile work environment."); *Hemphill v. ARAMARK Corp.*, No. 1:12-cv-1584, 2014 WL 1248296, at *14 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014) (per curiam) (concluding that "incidents . . . amount[ing] to nothing more than a series of ordinary personnel decisions" do not create a hostile work environment). Moreover, Claiborne grounds his claims in a handful of isolated incidents that occurred over the course of more than a year. *See Boyer-Liberto*, 786 F.3d at 277 ("[V]iable hostile work environment claims often involve repeated conduct."). None of this conduct meets the severe or pervasive standard required to allege a hostile work environment claim. The Court, therefore, will dismiss Count Four with prejudice.

### 5. *Count Five: FMLA Interference*[6]

In Count Five, Claiborne alleges that Youngman unlawfully interfered with his FMLA request by not discussing the FMLA request process with him. To establish an interference claim under the FMLA, the plaintiff must "demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015). Although Claiborne submitted FMLA paperwork to Youngman that Youngman did nothing about, Claiborne does not explain how this harmed him. *See id.* The Court, therefore, will dismiss Count Five with prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court will grant the defendants' motion in part and deny the motion in part. The Court will deny the motion as to Claiborne's denial of training claim (Count One). The Court will grant the motion as to Claiborne's USERRA claims and will dismiss those claims without prejudice. The Court will grant the motion as to the remaining counts (Counts Two through Five) and will dismiss those claims with prejudice. Mark T. Esper, in his official capacity as Secretary of Defense, shall remain the sole defendant in this case.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the pro se plaintiff.

Date: 21 February 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[6] Although the defendants do not address Claiborne's FMLA claim in their motion to dismiss, they ask the Court to dismiss Claiborne's complaint in its entirety. The Court, therefore, will consider whether Claiborne adequately pleads a claim for relief under the FMLA.