IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BOBBY LANE CLAIBORNE,
         Plaintiff,

v.                                                              Civil Case No. 3:19-cv-113

DANA LYNN YOUNGMAN, et al.,
         Defendants.

## OPINION

This matter comes before the Court on the defendant's and the plaintiff's cross-motions for summary judgment.[1] (ECF Nos. 44, 46, 48.)

The pro se plaintiff, Bobby Lane Claiborne, a retired African American veteran, asserts a Title VII claim for race discrimination against the defendant, the United States' Acting Secretary of Defense, Christopher C. Miller.[2] Title VII of the Civil Rights Act of 1964 prohibits discrimination in federal employment based on race. 42 U.S.C. § 2000e–17.

Claiborne's originally sued the Defense Logistics Agency Aviation Branch ("the DLA Avn"), his former employer, and seven other defendants on various grounds. After the Court

---

[1] Claiborne filed a motion for summary judgment a day beyond the Court-ordered deadline. (ECF Nos. 43, 46.) Because "[p]ro se litigants are entitled to some deference from courts," the Court accepts Claiborne's tardy motion and considers its merits. *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989).
    Twenty days after Claiborne filed his motion for summary judgment, he filed a second brief, requesting that the Court accept additional documents for review and renewing arguments that he made in his motion for summary judgment. (ECF No. 48.) Although Claiborne ignored procedure and previous Court Orders by filing this untimely brief without the Court's permission, the Court construed the second brief as part of Claiborne's motion for summary judgment and reviewed the additional documents.

[2] Miller assumed this office in November 2020, replacing Defense Secretary Mark Esper. Because the briefs in this case predate this change in personnel, the parties name Mark Esper as the Secretary of Defense.

partially granted the defendants' motion to dismiss, Miller remains the sole defendant and the Title VII claim the sole allegation.

For the reasons set forth below, the Court will deny Claiborne's motion for summary judgment and grant the defendant's.

## I. UNDISPUTED FACTS[3]

In April 2012, Claiborne retired from active duty in the Army and returned to work at the DLA Avn as a Weapon System Support Manager ("WSSM"). In July 2012, Claiborne's supervisor, Dana Lynn Youngman, moved Claiborne to a Weapon System Program Manager ("WSPM") position.

Although the parties dispute whether DLA Avn required WSPMs to receive formal Integrated Process Team ("IPT") training, most WSPMs received the training. The IPT training helped WSPMs use "the manual effectively," gain the necessary skills to follow system processes and workflows, access the system, and manage other personnel. (ECF No. 21, at 4.) Those in charge of the WSPM program have deemed the training critical to a WSPM's success.

Claiborne missed previous IPT trainings because he was on active duty. Claiborne, therefore, asked to take the July 2012 IPT training to prepare for his upcoming transition to the WSPM role. Youngman denied his request for various reasons, including Claiborne's indication that he felt "overwhelmed at work" and because Claiborne had not yet received a weapons system assignment. (ECF No. 45, 18–19.) Except for Claiborne, all WSPMs under Youngman's supervision—including an African American WSPM, Felicia Barwell—attended formal IPT training.

---

[3] The Court also detailed the background of this case in its February 21, 2020 Opinion. (*See* ECF No. 36, at 2–7.)

2

In lieu of the formal training, Youngman provided Claiborne the IPT manual and tasked Barwell with training Claiborne. Barwell often did not have enough time to train Claiborne, who says Barwell "did not show [him] real helpful information." (ECF No. 21, at 4.)

In October 2013, the DLA Avn Division Chief, Colonel Marc Thoreson, proposed terminating Claiborne for alleged unrelated misconduct. Claiborne accepted disability retirement instead.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element of its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing cross-motions for summary judgment, "the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

## IV. DISCUSSION

### A. Relevant Law

"A plaintiff can defeat summary judgment in a discrimination action under Title VII by either of two avenues of proof: (a) through direct evidence that . . . race . . . motivated the [adverse employment action or denial of training], or (b) through the burden-shifting scheme established by

*McDonnell Douglas Corp*, 411 U.S. at 802, 93 S. Ct. 1817." *Schafer v. Md. Dep't of Health & Mental Hygiene*, 359 F. App'x 385, 388 (4th Cir. 2009).

Under the *McDonnell Douglas* burden-shifting scheme, if the plaintiff presents a prima facie case of discrimination, the burden shifts to the defendant to articulate a valid, nondiscriminatory reason for the adverse employment action or denial of training. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). If the defendant does so, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason served as pretext for discrimination. *Id.*

Employers discriminate in many ways, including through the denial of training and through disparate treatment.

> To establish a prima facie case of discriminatory denial of training, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination.

*Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649–50 (4th Cir. 2002).

To make a prima facie case of disparate treatment, the plaintiff must establish "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Scott v. Health Net Servs., LLC*, 463 F. App'x 206, 208 (4th Cir. 2012); *see also White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

### B. Claiborne's Motion for Summary Judgment

Claiborne asks the Court to grant summary judgment in his favor. Because he offers no direct evidence of employment discrimination, he must satisfy the *McDonnell Douglas* burden-shifting framework.

4

*1. Prima Facie Case*

Claiborne's complaint alleges that the defendant denied him training because of his race *and* that the defendant treated him differently than other WSPMs because of his race. Accordingly, the Court will analyze whether Claiborne establishes a prima facie case of either discriminatory denial of training or disparate treatment.

Claiborne's membership in a protected class serves as an element of both prima facie cases. The Court finds that Claiborne satisfies that element because the parties do not dispute Claiborne's race—African American.

*a. Discriminatory Denial of Training*

Claiborne fails to establish a prima facie case of discriminatory denial of training. Although Claiborne shows that DLA Avn generally provided IPT training to WSPMs and that he, as a WSPM, "was eligible for the training," he does not show that DLA Avn denied him the IPT training "under circumstances giving rise to an inference of discrimination." *Thompson*, 312 F.3d at 650. Claiborne offers no evidence that raises any inference that DLA Avn discriminated against Claiborne by denying him IPT training. Indeed, when DLA Avn denied Claiborne the IPT training, it extended the training to Felicia Barwell, an African American WSPM. (ECF No. 21, at 4; ECF No. 45, Ex. 12.) Consequently, Claiborne falls short of showing a prima facie case of discriminatory denial of training.

*b. Disparate Treatment*

Claiborne also fails to demonstrate a prima facie case of disparate treatment. Setting aside whether Claiborne performed his job to the satisfaction of his employer and whether DLA Avn treated him differently than other "similarly situated employees outside the protected class," Claiborne does not show that DLA Avn's denial of IPT training amounts to an adverse

employment action. *Scott*, 463 F. App'x at 208.

Courts generally do not consider the denial of the opportunity to attend training an adverse personnel action under Title VII. Unless the plaintiff can show that "denial of training. . . had a significant detrimental effect on [him] or [his] employment status," an employer's denial of training does not satisfy the adverse employment action element of a Title VII claim. *Chapman v. Geithner*, No. 1:11cv1016, 2012 WL 1533514, at *21–22 (E.D. Va. 2012), *aff'd* 507 F. App'x 299 (4th Cir. 2013).[4] Here, despite not participating in the IPT training, Claiborne transitioned to the WSPM role, "received a 'fully successful' rating from his supervisor for calendar 2012, and was not disciplined or penalized for not having taken the training." (ECF No. 45, at 15.) Because "the terms, conditions, [and] benefits of [Claiborne's] employment" remained the same despite not receiving the IPT training, he fails to show that the denial of training amounted to an "adverse employment action." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Guten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001), *rev'd on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Claiborne, therefore, fails to prove a prima facie case of disparate treatment.

## 2. *Pretext*

Even if Claiborne *could* make a prima facie case of either discriminatory denial of training or disparate treatment based on race, his Title VII claim still fails because he cannot demonstrate pretext. The defendant says that Youngman denied Claiborne's request for IPT training for various valid, nondiscriminatory reasons, including Claiborne's indication that he felt "overwhelmed at

---

[4] *See also Jensen-Graf v. Chesapeake Emp'rs' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (finding denial of one training not an adverse action without facts showing how the denial harmed the plaintiff).

work" and because Claiborne had not yet received a weapons system assignment. (ECF No. 45, 18–19.) Claiborne offers no evidence to show that the defendant's proffered reasons serve as pretext, masking discrimination. Thus, his Title VII claim falters.

### C. Miller's Motion for Summary Judgment

The defendant also moves for summary judgment, arguing that Claiborne cannot establish a prima facie case of discrimination, nor can he show that the defendant's valid, nondiscriminatory reasons for denying him the training serve as pretext for race discrimination. (ECF No. 45, at 1–2, 22.) For the reasons discussed above, the Court agrees.

The plaintiff's Title VII claim fails because he does not show a prima facie case of discrimination under either theory: discriminatory denial of training or disparate treatment. Even if Claiborne could make such a showing, his claim fails because he does not show that the valid, nondiscriminatory reasons offered by the defendant for denying Claiborne the training are pretextual. The Court will, therefore, grant the defendant's motion for summary judgment.

### V. **CONCLUSION**

For the foregoing reasons, the Court will deny the plaintiff's motion for summary judgment, (ECF Nos. 46, 48), and grant the defendant's motion for summary judgment, (ECF No. 44).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the pro se plaintiff.

Date: 9 December 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge